public interest and the wholesome administration of the law. It will not answer this view to say, that the law presumes all men honest, that the law will not presume that a man will commit a fraud or violate a law. It is enough to say that good legislation will not place a man under temptations to commit a wrong, which experience shows the mass of mankind have not the virtue to resist. It is true, we must submit to the law as we find it; but I think it clear, that if the bankruptcy act will bear the construction contended for, it ought to be adopted.

Upon the question then of the true construction of the act, it would seem, that congress must have intended that the costs and expenses of the bankrupt in his defense, and other proceedings should be paid out of the proceeds of his estate. A court will be reluctant to hold, that the law making power while expressly providing, that a party may appear in court and defend himself by the aid of counsel and witnesses, intended in the same act to deprive him of all the means of doing so. The fact, that no provision is made for withholding from the assets to be handed over to the assignee sufficient to pay these costs and expenses, warrants us in looking sharply to the act to find from what source it was intended, that such costs and expenses should be paid. We find in section 28, a provision for paying out of the fund "the fees, costs and expenses of suits and the several proceedings in bankruptcy under this act." This language would seem to be broad enough to cover the case before us. The words "fees, costs, and expenses" are not limited to the side of the creditors or the assignee, nor yet to the officers of the court. It is the daily practice of allowing the counsel for the petitioning creditor to be paid out of the fund for his services in the bankruptcy court. On what express words of the act are similar fees for similar services denied to the counsel for the bankrupt? Certainly none. By whatever argument these words of the act are made to embrace the compensation of counsel for the petitioning creditor the same argument will apply a fortiori to the compensation of counsel for the bankrupt.

I submitted the question herein presented to this court in 1868, in the Case of Heirschberg [Case No. 6,329]. In that case, the bankrupts' attorneys had not thought it right to take from the funds of the bankrupts their compensation in advance for filing his petition, &c., but had come in after the estate had gone into the hands of the assignee and asked to be paid from the fund. I then submitted to the court as a reason for allowing it, that "the funds from which the solicitor is paid must come from what should be the assets of the bankrupt, or from his future earnings. In pursuing the course here pursued, the solicitor submits

the amount of his compensation to the court under the eye of the creditors. In the course ordinarily pursued, he obtains his compensation from the same fund, the amount being measured by the good feelings of the bankrupt, and under some temptation to give him a larger sum than the creditors would sanction, or the court might think a just compensation. If the act will bear this construction, it would seem to tend to a better practice than that which it is believed now generally prevails." I recur to these remarks now only to say that the experience of three years has only deepened the impression then expressed—and since the Case of Comstock [Case No. 3,074], in which one of our ablest judges has taken the same view here urged, I have thought it right to submit the question again, asking for a careful reconsideration of the question. Should the court think the views here expressed, well taken, I recommend that an order be entered, allowing the claimant the sum of $250, which I think would be a fair compensation for the services which would seem to come under provisions of the act, upon the principle of construction above contended for. Respectfully submitted.

BLATCHFORD, District Judge. On evidence and a certificate bringing this case within the decision in Re Montgomery [Id. 9,726], I should follow that decision.

NOTE. The decision in the Case of Montgomery, above referred to, is as follows, Blatchford, District Judge: "If the assignee shall, in writing, approve of the payment of this bill out of the funds of this estate on the grounds set forth in the petition of Mr. Olney, and in the certificate of the register, and of the amount of the charges, and order will be made allowing its payment."

## Case No. 2,804.

### In re CLARK et al.

[The case reported under above title in 3 N. B. R. 487 (Quarto, 122), and in 1 Am. Law T. Rep. Bankr. 186, is the same as Case No. 1,- 418.]

## Case No. 2,805.

### In re CLARK et al.

[4 N. B. R. 237 (Quarto, 70).][1]

District Court, S. D. New York. Nov. 7, 1870.

EXAMINATION OF BANKRUPT—RELEVANCY AND MATERIALITY OF EVIDENCE.

Where wife of a member of a bankrupt firm loaned the firm, previous to its bankruptcy, moneys arising from the sale of property which had been held in her husband's name, but the proceeds of which were promised to her in consideration of her executing a deed therefor, said moneys not appearing on the firm books to the credit of the wife, but to credit of her husband as a member of the firm, no separate account appearing in the husband's separate ac-

---

[1] [Reprinted by permission.]